UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOHNNY FULLER,<br><br>    *Plaintiff,*<br><br>v.<br><br>OWENS CORNING INSULATION SYSTEMS, LLC,<br><br>    *Defendant.* | §<br>§<br>§<br>§<br>§   Civil Action No. 3:21-CV-3197-X<br>§<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

Johnny Fuller sued his former employer, Owens Corning Insulation Systems, LLC ("Owens Corning") for disability discrimination, interference with his rights under the Family and Medical Leave Act ("FMLA"), and retaliation under state workers' compensation laws. Before the Court is Owens Corning's motion for summary judgment. [Doc. 26]. For the reasons stated below, the Court **GRANTS** summary judgment as to Fuller's termination-disability claim and FMLA-interference claim. But the Court **DENIES** summary judgment as to Fuller's accommodation-disability claim, FMLA-retaliation claim, and workers' compensation retaliation claim. The Court also concludes that collateral estoppel will apply at trial to the issue of whether Fuller suffered a workplace injury on April 8, 2020 due to the evidentiary proceeding where he had counsel and which resulted in a determination that Fuller did not suffer a workplace injury on that date.

1

## I. Factual Background

Fuller was a machine operator at Owens Corning's plant in Waxahachie, which produces fiberglass insulation. Fuller claims he was injured on April 8, 2020 while lifting one side of a 125-pound paper backing roll (a "stub" or partial role) into its cradle. About twenty minutes later, he claimed he felt more pain loading a full roll into a cradle. He reported the injury to his supervisor but said he didn't need to go to the hospital and worked the rest of his shift. On April 13, Fuller reported to the on-site nurse. Fuller then went to a medical clinic under Owens Corning's workers' compensation coverage and a doctor diagnosed him with a hernia. The clinic released him to perform light duty work, but Owens Corning told Fuller it could not accommodate a light duty restriction and placed him on a leave of absence (using FMLA leave and obtaining disability pay that was less than 50% of his regular earnings). He subsequently saw a physician, Dr. Julianne Santarosa, under the workers' compensation plan, and the physician recommended surgery.

On April 16, Fuller met with Owens Corning's investigative team, appeared to have serious discomfort during the meeting, but, according to the team, couldn't identify from the security footage the point in time on April 8 that he injured himself. Fuller admitted that it was "[t]ake you to your knees type [of] pain" but then clarified that "it hurts, and a few seconds later the pain subsided."[1] Owens Corning's team reviewed the footage of Fuller's entering the building, working his shift, and leaving the building from April 8 and concluded that there was no sign of an injury during

---

[1] Doc. 34 at 89.

the shift. When they reviewed the footage with Fuller, Fuller stated he felt pain while installing the stub role and "really felt it hurt a lot" when installing the full role about twenty minutes later.[2]

On April 20, Owens Corning placed Fuller on paid leave (after his diagnosis but before surgery). In the course of the investigation, Owens Corning discovered two photographs of Fuller that predated the date of the alleged injury and that showed what the nurse confirmed to be the same bulge she identified as a hernia on April 13. Fuller contends that the bulge was not new but that the pain was. Owens Corning's workers' compensation insurance carrier, Gallagher Bassett, denied Fuller's workers' compensation claim on April 27.

In May, after the workers' compensation carrier denied coverage, Fuller got a referral from his own doctor to a different surgeon, Dr. Mazen Iskandar. That surgeon's notes from May 6, 2020 state that Fuller noticed the symptoms "a few weeks ago" and that they "did not start at work."[3] Dr. Iskandar diagnosed Fuller with a hernia and performed surgery on June 12, 2020. Fuller claims that Dr. Iskandar discovered two hernias during the surgery.

On July 20, Owens Corning released Fuller to work without restriction but kept him on paid leave pending the completion of its investigation into the truth of Fuller's claim. After it concluded the investigation, Owens Corning terminated

---

[2] *Id.* at 94.

[3] Doc. 28-1 at 43.

Fuller's employment because it determined he made multiple misrepresentations about his alleged workplace injury.

Fuller filed a Texas administrative appeal of the workers' compensation insurance denial. Fuller testified at the evidentiary hearing that his bulge predated his alleged injury, but he had not felt symptoms until the injury on April 8. The administrative law judge for the Texas Department of Insurance concluded that the carrier's evidence was more persuasive and that Fuller failed to show by a preponderance of the evidence that he suffered a workplace injury on April 8. Fuller appealed, and the Texas Department of Insurance appeals panel affirmed that decision.

Fuller also filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging that Owens Corning discriminated against him because of his disability. Fuller obtained a "right to sue" letter and filed this suit, bringing claims for: (1) disability discrimination under the Americans with Disabilities Act ("ADA") and the Texas Labor Code; (2) violation of the FMLA; and (3) workers' compensation retaliation under Chapter 451 of the Texas Labor Code.

## II. Legal Standard

District courts can grant summary judgment only if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."[4] A dispute "is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."[5]

### III. Analysis

Owens Corning argues that collateral estoppel bars almost all of Fuller's claims and also raises claim-specific arguments. The Court takes them in turn.

### A. Arguments on Multiple Claims

Owens Corning's near-global argument is that collateral estoppel precludes Fuller from relitigating the issue of whether he suffered a workplace injury on April 8, 2020. Because the administrative law judge found that he did not, Fuller cannot contend now that he did (the argument goes). And because of that, Fuller cannot demonstrate that Owens Corning's nondiscriminatory reason for firing him (falsely claiming he was injured on April 8, 2020) was false and pretextual. Fuller counters that the issues in the suit are whether Owens Corning engaged in unlawful discrimination and are therefore different than the prior issue of whether he suffered a workplace injury on that date. The Court concludes that collateral estoppel does not give Owens Corning the win it seeks because it cannot preclude Fuller from arguing the pretext prong that Owens Corning ignores.

First, the Court must clarify that this issue is about collateral estoppel (or issue preclusion) and not res judicata (or claim preclusion). Collateral estoppel "precludes a party from litigating an issue already raised in an earlier action between the same

---

[4] FED. R. CIV. PROC. 56(a).

[5] *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (cleaned up).

parties only if: (1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action."[6] The prior proceeding was an evidentiary proceeding where the administrative law judge concluded:

> After review of the evidence, it is determined that [Fuller] failed to meet his burden of proof [that he suffered a workplace injury on April 8, 2020]. While [Fuller]'s testimony and the opinion from Dr. Linguist were considered, the more persuasive evidence on this matter came from [the] Insurance Carrier. As [Fuller] admitted he had an abdominal bulge prior to the injury, the evidence was not persuasive in establishing that any hernia was enhanced, accelerated, or worsened given the delay in seeking medical treatment. It is noted that the records from Dr. Mazen Iskandar, surgeon at Baylor Scott and White, specifically document that symptoms "did not start at work." The preponderance of the evidence does not support that [Fuller] sustained damage or harm to the physical structure of his body while in the course and scope of employment on April 8, 2020."[7]

In short, the administrative law judge found that the preponderance of the evidence showed Fuller did not suffer a workplace injury on April 8, 2020.

So what effect does that issue have on Fuller's claims? Owens Corning argues that it sinks his claims for disability discrimination, FMLA retaliation, and workers' compensation retaliation because the burden-shifting regimes end with a requirement that Fuller prove the stated reason for termination (that Fuller lied about a workplace injury) was false and pretextual.[8]

---

[6] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 572 (5th Cir. 2005).

[7] Doc. 28-7 at 10 (citation omitted).

[8] *See* Doc. 36 at 8 ("To defeat summary judgment, Fuller must come forward with evidence that Owens Corning's articulated reasons are false, and that its real motivation was discriminatory.").

6

Disability-discrimination claims: "False and pretextual" is not how the Fifth Circuit articulates pretext for disability-discrimination claims. This is because disability-discrimination claims use the "motivating factor" test.[9] So the Fifth Circuit frames the pretext inquiry for disability claims as requiring the plaintiff to:

> offer sufficient evidence to create a genuine [dispute] of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).[10]

Sure, "not true" and "false" are the same thing. But Owens Corning yada yadas over #2—the possibility that Owens Corning's nondiscriminatory reason for firing Fuller, while true, was one motivating factor but another factor was discriminatory animus. But this Court cannot yada yada over Fifth Circuit precedent. As explained in the disability-discrimination section below, Fuller has some evidence that Owens Corning coupled a discriminatory reason (his disability) with its correct and lawful view that he didn't suffer a workplace injury on April 8, 2020. Collateral estoppel exists but cannot bar Fuller's ADA claim.

FMLA-retaliation claims: As with the ADA, the FMLA uses a motivating-factor test instead of a but-for test for causation.[11] And like the ADA, the FMLA does not

---

[9] *See Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (per curiam) ("Under a plain reading of the statute, and in accord with the position of other circuits, we conclude that the ADA does not require 'sole causation.' The proper causation standard under the ADA is a 'motivating factor' test.").

[10] *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 702 (5th Cir. 2014) (cleaned up).

[11] *See Ion v. Chevron USA, Inc.*, 731 F.3d 379, 391 (5th Cir. 2013) (stating that the plaintiff "must offer evidence to show that the exercise of his FMLA rights was a motivating factor in his termination").

7

tie pretext only to falsity. Instead, it requires "the employee [to] offer sufficient evidence to create a genuine [dispute] of fact either that (a) the employer's proffered reason is a pretext for discrimination, or—and herein lies the modifying distinction—(b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination."[12]  As explained in the disability-discrimination section below, Fuller has some evidence that Owens Corning coupled a discriminatory reason (his disability) with its correct and lawful view that he didn't suffer a workplace injury on April 8, 2020.  Collateral estoppel exists but cannot bar Fuller's FMLA-retaliation claim.

<u>Workers' compensation claim:</u> Falsity is not a clean kill to Fuller's workers' compensation claim either.  Yes, it is element five of the Texas Supreme Court's test for a causal link between the filing of a compensation claim and termination in workers' compensation cases:

> Circumstantial evidence sufficient to establish a causal link between termination and filing a compensation claim includes: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false.[13]

But Fuller points out, and Owens Corning doesn't dispute, that "there is no authority requiring evidence be presented on every factor in order to establish the

---

[12] *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).

[13] *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996) (cleaned up).

8

requisite causal connection."[14]  Sure, Fuller cannot prove the fifth factor because he cannot show the stated reason for his firing was false.  But the Texas Supreme Court has found evidence of two of the five factors to be enough,[15] so a lack of evidence on one is not a clean kill.

Overall, collateral estoppel does not bar any of Fuller's claims, but it will preclude him at trial from arguing he suffered a workplace injury on April 8, 2020.

### B. Disability Discrimination

Instead of collateral estoppel giving Owens Corning an automatic win, the Court must assess the remaining summary-judgment arguments on Fuller's disability-discrimination claims.  Fuller has disability claims for accommodation and termination.  Owens Corning contends: (1) Fuller can't make out a prima facie case for termination because he wasn't disabled when he was terminated; (2) on termination, Fuller has no evidence of pretext; (3) his claim for failure to accommodate loses because he was paid, never requested light-duty work, and has no evidence that a light-duty accommodation was available; and (4) Fuller has no evidence of pretext.  Fuller responds: (1) that he was placed on leave because of his disability, and his firing was an extension of being placed on leave; (2) evidence of pretext is Owens Corning's giving other injured employees light-duty assignments;

---

[14] Doc. 33 at 35; *see also City of Univ. Park v. Van Doren*, 65 S.W.3d 240, 250 (Tex. App.—Dallas 2001, pet. denied) ("[T]he list of factors identified in *Cazarez* is merely illustrative: contrary to the City's assertion, we find no authority requiring evidence be presented on every factor in order to establish the requisite causal connection.").

[15] *Van Doren*, 65 S.W.3d at 250 n.11 ("Indeed, in *Cazarez*, the supreme court concluded that evidence on just two of the factors was sufficient to allow the district court to infer the termination in that case violated section 451.001." (citing *Cazarez*, 937 S.W.2d at 452)).

9

and (3) his disability-insurance pay roughly halved his income. The Court concludes that Fuller's accommodation-disability claim survives summary judgment while his termination-disability claim does not.

Regarding the termination claim, Fuller's prima-facie burden is to show: (1) that he has a disability, has a record of having a disability, or is regarded as having a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability.[16] The problem for Fuller is that the undisputed evidence shows he was not disabled or regarded as disabled when he was fired. Fuller's deposition on that topic went like this:

> Q: Are you alleging that in July of 2020 you were regarded as disabled?
>
> A: I don't think so.
>
> Q: Are you alleging that in November 2020 you were regarded as disabled?
>
> A: In November of 2020 when I got terminated?
>
> Q: Right.
>
> A: I was not disabled.
>
> Q: My question was: You're not alleging that you were regarded as disabled at that time, right?
>
> A: Correct.[17]

---

[16] *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017).

[17] Doc. 28-1 at 37.

Accordingly, Fuller cannot make out his prima facie case for disability termination because he has no evidence that he was disabled or regarded as disabled when he was terminated.[18]

The prima facie case for accommodation is more complicated. Owens Corning argues: (1) leave is an accommodation; (2) Fuller had to but did not request an accommodation; and (3) Fuller cannot prove there was a light-duty position. On leave being an accommodation, Owens Corning is correct in that "[t]ime off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee with indefinite leave."[19] Time off was a reasonable accommodation until Fuller could work again. But Owens Corning terminated his employment in November 2020, some five months after he was cleared to return to work. It is this period for which Fuller could seek recovery under Fifth Circuit precedent for disability discrimination for an accommodation.

On whether Fuller requested an accommodation, the Fifth Circuit has stated that such a burden exists when the disability is unknown.[20] Here, Owens Corning knew of the disability, so the question is whether Owens Corning or Fuller is

---

[18] The case Fuller cites for the proposition that a person who returns, is no longer disabled, and is then fired has made out a prima facie case involved the employer's regarding the employee as disabled. *See Busken v. City of Greenville*, No. 3:19-CV-2808-X, 2021 WL 5140827, at *4–5 (N.D. Tex. Nov. 3, 2021) (Starr, J.) (noting that employer regarded plaintiff as disabled at the time of adverse action).

[19] *Moss*, 851 F.3d at 418 (cleaned up).

[20] *See Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) ("This court has recognized that where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." (cleaned up)).

11

responsible for the breakdown of the informal, interactive process of discussing an accommodation.[21]  Here, the evidence shows that Owens Corning placed Fuller on leave to investigate the truth of his injury allegation rather than providing an accommodation.  So in the light most favorable to Fuller, Owens Corning stopped the interactive process of discussing an accommodation.

Third, Fuller has some evidence of a light-duty position.  In his deposition, he testified that Owens Corning in the past accommodated injured employees by making them a safety lead on any shift, which is not a separate job opening.[22]  As such, Fuller has marshalled some evidence in support of his prima facie case of disability discrimination regarding an accommodation.

Finally, the Court must assess Owens Corning's argument that Fuller has no evidence of pretext.  Fuller's accommodation-disability claim contends that Owens Corning gave other injured individuals light-duty assignments, noted to the clinic performing the workers' compensation evaluation that there was light-duty work, but put Fuller on a leave of absence that left him with substantially reduced disability-insurance pay.  While Fuller's evidence of pretext could be stronger, it nonetheless amounts to some evidence of pretext regarding Fuller's discrimination claims.  As

---

[21] *Id*. ("[A]n employer cannot be found to have violated the ADA when responsibility for the breakdown of the informal, interactive process is traceable to the employee and not the employer" (cleaned up).

[22] Owens Corning also takes issue with Fuller's declaration testimony that states "there were other light duty jobs that I could have performed." Doc. 34 at 7.  The Court agrees with Owens Corning that this statement is too conclusory to credit, but Fuller had the specificity he needed in his deposition.

such, his accommodation-disability claim survives summary judgment while his termination-disability claim does not.

### C. FMLA

Fuller has FMLA claims for interference and retaliation. As addressed above, collateral estoppel does not foreclose Fuller's FMLA-retaliation claim. So the Court must address Owens Corning's remaining arguments on the FMLA claims. On the FMLA-interference claim, Owens Corning argues that Fuller got the benefits that the FMLA entitled him to: Twelve weeks of paid leave. On the FMLA-retaliation claim, Owens Corning argues that the termination was months after Fuller went out on FMLA leave and that he has no evidence of pretext. Fuller responds with caselaw showing that a termination after returning from FMLA leave gives rise to an interference claim, and that his retaliation claim stands because he was fired when he finished his leave. **(Doc. 33 at 31–33.)** The Court grants summary judgment on Fuller's FMLA-interference claim but not on Fuller's FMLA-retaliation claim.

As to the interference claim, Fuller does not dispute that he was given his twelve weeks of leave under the FMLA. He states, however, that his firing on return to work should be an interference claim under Tenth Circuit precedent.[23] But this Court is not bound by that precedent and believes Fuller to be articulating a retaliation claim that alleges Owens Corning fired him for taking FMLA leave. As

---

[23] *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1288 (10th Cir. 2007).

such, Fuller fails to raise a fact dispute on the prima facie element that Owens Corning denied him FMLA benefits.[24]

As to the FMLA-retaliation claim, the Court concludes this claim survives summary judgment because Fuller has some evidence of pretext. Firing an employee once he returns from FMLA leave is a classic FMLA-retaliation fact pattern. Here, Fuller never came back as a machine operator. He was on leave for the investigation into the truth of his workers' compensation claim until he was fired. Owens Corning claims this delay destroys his FMLA-retaliation claim. If it did, every employer could terminate an employee for taking FMLA leave by firing him after he returned and claiming the twelve weeks that passed since the employee sought leave absolves the company of liability. The true measure of timing for pretext is not so blindfolded. Here, Owens Corning placed Fuller on administrative and FMLA leave and fired him before he returned to his machine-operator post. But as with his disability claim, Fuller has evidence that other injured employees were given light-duty work, that Owens Corning noted to the clinic performing the workers' compensation evaluation that there was light-duty work, and that Owens Corning put Fuller on a leave of absence that left him with substantially reduced disability-insurance pay. This evidence of pretext means that Fuller's FMLA-retaliation claim survives summary judgment.

### D. Workers' Compensation Retaliation

---

[24] *See Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017) (stating that the prima facie elements for a FMLA-interference claim are: (1) the plaintiff was an eligible employee; (2) his employer was subject to the Act; (3) he was entitled to leave; (4) he gave proper notice of an intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled).

14

Fuller's final claim is for retaliation under the workers' compensation laws (namely, that Owens Corning fired Fuller for filing a workers' compensation claim). Owens Corning argues that Fuller has no prima facie case on the causal link between his claim and termination and no evidence of pretext. Fuller responds that the terminators knew of his workers' compensation claim and had negative attitudes about his injury and that there was close timing between his claim and his placement on leave and termination. Regarding pretext, Fuller argues that the flawed and biased investigation was some evidence of pretext. The Court agrees with Fuller.

First, the Court concludes that Fuller has made a prima facie case of a causal link between his workers' compensation claim and his termination. As addressed in the collateral-estoppel section, the test for a causal link between the filing of a compensation claim and termination is:

> (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false.[25]

Here, Fuller has on his side evidence that the terminators knew of his workers' compensation claim, had negative attitudes about his injury, and Owens Corning allowed other injured workers to perform light-duty work (factors 1, 2, and 4). The Texas Supreme Court has found evidence of two of the five factors to be enough,[26] and

---

[25] *Cazarez*, 937 S.W.2d at 451 (cleaned up).

[26] *Van Doren*, 65 S.W.3d at 250 n.11.

Fuller has three. On balance, the Court concludes that Fuller has marshalled sufficient evidence to make his prima-facie showing of a causal link.

Owens Corning lastly claims that Fuller has no evidence of pretext. Fuller elaborates that, while the investigation turned up Fuller's doctor's note saying his symptoms didn't start at work, Fuller had previously told Owens Corning about his bulge, and Owens Corning never sought clarification from that doctor. Fuller also states that Owens Corning gave other injured employees light-duty assignments; did not seek medical advice on whether Fuller's reported injury was consistent with the pain levels he described; twisted his words to fit their story; disregarded Fuller's explanation; and failed to clarify any discrepancies with Fuller or his doctors. While Fuller's evidence of pretext could be stronger, it is nonetheless some evidence of pretext. Accordingly, Fuller's workers' compensation retaliation claim survives summary judgment.

## IV. Conclusion

In sum, the Court **GRANTS** summary judgment as to Fuller's termination-disability claim and FMLA-interference claim. But the Court **DENIES** summary judgment as to Fuller's accommodation-disability claim, FMLA-retaliation claim, and workers' compensation retaliation claim. The Court also concludes that collateral estoppel will apply at trial to the issue of whether Fuller suffered a workplace injury on April 8, 2020.

**IT IS SO ORDERED** this 9th day of June, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE